UNITED STATES DISTICT COURT
SOUTHERN DISTRICT OF NEW YORK

Subversive Tools, Inc.,

        Plaintiff,

v.

Bootstrap Farmer LLC,

        Defendant.

Civil Action No: 7:23-cv-06946

**JURY TRIAL DEMANDED**

# COMPLAINT

Plaintiff, Subversive Tools, Inc. (hereinafter "Plaintiff"), as and for its Complaint against Defendant, Bootstrap Farmer LLC (hereinafter, "Defendant"), alleges the following:

## PARTIES

1. Plaintiff, Subversive Tools, Inc., is a corporation duly organized and existing under the laws of the State of New York, having its principal place of business at 635 Claryville Road, Claryville, New York 12725.

2. Upon information and belief, Defendant, Bootstrap Farmer LLC, is a limited liability company duly organized and existing under the law of the State of North Carolina, having its principal place of business at 151 Crawford Road, Downingtown, Pennsylvania 19335.

## JURISDICTION AND VENUE

3. This is an action for trade dress infringement and trademark dilution under the Lanham Act, 15 U.S.C. §1051 *et seq.*; and related New York statutory and common law claims of dilution and unfair competition.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1332, 1338 and 1367 and 15 U.S.C. §§1116 and 1121.

5. This Court has personal jurisdiction over the Defendant under New York CPLR §§ 302(a)(1), (a)(2), (a)(3)(i) and/or (a)(3)(ii) by virtue of Defendant's transacting and doing business in the State of New York and the Southern District of New York, and by having committed tortious acts within and outside of the State causing injury to Plaintiff within the State of New York and the Southern District of New York.

6. Venue is proper in the Southern District of New York based upon 28 U.S.C. §1391(b)(2) as a substantial part of the events giving rise to these claims occurred in this judicial district.

## PLAINTIFF AND THE WINSTRIP TRADE DRESS

7. Plaintiff manufactures and offers for sale various goods and services within the field of farming and agriculture, including, but not limited to, plant cultivation trays.

8. Plaintiff's goods are sold in interstate commerce throughout the United States and in this District.

9. Plaintiff's products have become well-known and highly respected in the farming industry. Plaintiff has gained a substantial and loyal following of customers, owing to its established reputation. Plaintiff has worked hard to establish and maintain this reputation and goodwill.

10. One of the most popular products offered by Plaintiff is its WINSTRIP® air pruning nursery tray. Plaintiff's WINSTRIP® trays assist in plant cultivation by preventing roots from circling and allowing more airflow into the soil.

11. Plaintiff's WINSTRIP® tray has an overall appearance which bears a distinctive trade dress (hereinafter, the "WINSTRIP® Trade Dress"). Examples of the overall appearance of Plaintiff's WINSTRIP® trays featuring the WINSTRIP® Trade Dress are attached as **Exhibit A** and shown below:



12. Specifically, the WINSTRIP® Trade Dress comprises the overall look and appearance of particularly shaped cells and air spaces oriented diagonally within a tray. The trade

dress includes the orientation and combination of the cells, airspaces and tray sides. When viewed from the top, air spaces, which do not border the side walls of the tray, form a square shaped opening. When viewed from the top, the cells, which do not border the side walls of the tray, have a square shaped opening which are larger than the air space openings. Air space openings at the top of the air space are surrounded by four cells, each cell being on one of four sides of the opening of the top of the air space, and sharing a common wall with the top of the air space. The air spaces and cells when viewed from the top are oriented diagonally with respect to the edges or sides forming the tray. The diagonal orientation of the cells and air gaps with respect to the tray sides give the WINSTRIP® tray a distinctive overall look and appearance. A schematic representation of the diagonal orientation of the cells and air spaces contributing to the overall look and appearance of the WINSTRIP® Trade Dress, with some of the air gaps and cells shown in solid lines (for convenience), is recreated below:



13. The WINSTRIP® Trade Dress, as a whole, is non-functional.

14. For example, the diagonal orientation of the cells and air spaces within the tray gives the WINSTRIP® tray a distinctive look. This diagonal orientation is non-functional because, for example, it provides no functional purpose, is not essential to the use or purpose of the product and does not affect the cost or quality of the product. Nonuse of the distinctive diagonal orientation of the cells and air spaces within the tray would not put competitors at a significant non-reputational disadvantage.

15. There are numerous alternative designs for plant cultivation trays that would achieve the same or similar effectiveness as Plaintiff's WINSTRIP® trays without the use of the

5

WINSTRIP® Trade Dress. For example, the orientation of the air cells need not be diagonally oriented with respect to the edges of the tray for the tray to effectively function as an air pruning nursery tray.

16. The WINSTRIP® tray and the WINSTRIP® Trade Dress were created by Aart Van Wingerden. The WINSTRIP® tray was initially manufactured and offered for sale by Winstrip, Inc., a company headed by Aart Van Wingerden.

17. On September 22, 1995, Winstrip, Inc. filed an application at the United States Patent and Trademark Office ("USPTO") for a design patent (the "Design Patent") covering the WINSTRIP® Trade Dress, listing Aart Van Wingerden as inventor and Winstrip, Inc. as assignee. This Design Patent for a "plant growing container" registered at the USPTO on August 5, 1997 and was given Registration No. D381,933. The Design Patent claimed "The ornamental design for a plant growing container, as shown and described." A copy of the Design Patent registration is attached as **Exhibit B**. The Design Patent expired on or around August 5, 2011.

18. Since at least as early as 1995, and up until March 2018, Winstrip, Inc. exclusively and extensively used the WINSTRIP® Trade Dress in interstate commerce, garnering significant goodwill from the consuming public.

19. In March 2018, Winstrip, Inc. assigned all intellectual property associated with the WINSTRIP® tray, including, but not limited to, the WINSTRIP® Trade Dress, along with all associated goodwill, to Neversink Tools, a partnership consisting of Conor Crickmore and Carson McNeal.

20. In June 2023, Conor Crickmore and Carson McNeal formed Plaintiff Subversive Tools, Inc. as a corporation in the State of New York. Shortly thereafter, Neversink Tools assigned

all of its trademarks, including the WINSTRIP® Trade Dress, and the goodwill associated therewith, to Plaintiff.

21. Since at least as early as March 2018, the WINSTRIP® Trade Dress has been used exclusively and extensively by Neversink Tools and Plaintiff. The WINSTRIP® Trade Dress is recognized and relied upon by purchasers of plant cultivation trays as identifying Plaintiff's goods, and as distinguishing them from the goods of others, and has come to represent and symbolize extremely valuable goodwill belonging exclusively to Plaintiff.

22. Plaintiff's WINSTRIP® Trays with the WINSTRIP® Trade Dress have been the subject of significant unsolicited media coverage throughout its history. For example, in 1999, C.S. Vavrina, a vegetable horticulturalist at the University of Florida Institute of Food and Agricultural Sciences publicly published a paper comparing the WINSTRIP® Trays with other competing transplant trays. *See*, **Exhibit C**.

23. On February 19, 2015, Fifth Season Garden Co. published an article titled "WINSTRIP Trays: Soil Blocks without the Mess" detailing the effectiveness of the WINSTRIP® Trays. *See*, **Exhibit D**.

24. There are numerous YouTube videos commenting about Plaintiff's WINSTRIP® Trays, often in comparison with competing products. See, for example:

    a. "Best Seedling Trays: Soil Blocks, Winstrip, and Plug Trays Compared" by Epic Gardening, published March 27, 2019, located at https://www.youtube.com/watch?v=HwcNOTLi9es:



b. "Are Winstrips Worth It" by No-Till Growers, published April 25, 2021, located at https://www.youtube.com/watch?v=VxrdtTp-jNs:



c. "NEVERSINK FARM WINSTRIP TRAYS REVIEW" by Tanner Farmstead, published June 13, 2023, located at https://www.youtube.com/watch?v=lWNSoGPVSbo:

8



d. "Why I gave up on Soil Blocks for Winstrip Trays" by Uphill Acre, published February 20, 2021, located at https://www.youtube.com/watch?v=bMh5MW9XKjw:



25.     In one such YouTube video, titled "Neversink Trays Vs Bootstrap Trays | Which Seedling Tray Is Better?" by Tanner Farmstead (published October 31, 2022), the video directly

compares Plaintiff's WINSTRIP® Trays with Defendant's trays. See, https://www.youtube.com/watch?v=bUD0vrVGxFs



26. Plaintiff has made substantial sales of its goods bearing the WINSTRIP® Trade Dress and has expended a large amount of money advertising and promoting its products bearing its distinctive WINSTRIP® Trade Dress.

**DEFENDANT'S UNLAWFUL CONDUCT**

27. Upon investigation and information, Defendant advertises and sells products in this judicial district and elsewhere in interstate commerce, which wrongfully use and infringe on the WINSTRIP® Trade Dress and the associated goodwill of Plaintiff.

28. Defendant is a direct competitor of Plaintiff in the sale of farming equipment including plant cultivation trays.

29. Upon investigation and information, in or around March 2022, Defendant began offering for sale air prune propagation trays bearing Plaintiff's distinctive WINSTRIP® Trade Dress design. A listing of the infringing design on Defendant's website is attached as **Exhibit E.**

30.     A comparison of Plaintiff's WINSTRIP® tray and Defendant's air pruning tray is shown below:

| Subversive Tools WINSTRIP® | Bootstrap Farmer Air Prune Propagation Tray |
|---|---|
|  |  |

31.     Defendant's infringing trays look virtually identical to Plaintiff's protected trade dress.  Specifically, Defendant's trays include cells and air spaces oriented diagonally within the tray.  When viewed from the top, the air spaces which do not border the side walls of the tray, form a square shaped opening.  Also, when viewed from the top, the cells which do not border the side walls of the tray, have a square shaped opening which are larger than the air space openings.  Air space openings at the top of the air space are surrounded by four cells, each cell being on one of four sides of the opening of the top of the air space, and sharing a common wall with the top of the air space.  The air spaces and cells when viewed from the top are oriented diagonally with respect to the edges or sides forming the tray.

32.     On March 24, 2022, Defendant published a video on YouTube titled "The History of Air Pruning and Soil Blocks" (the "Bootstrap Video"), shortly after the launch of their infringing air prune propagation trays.  The Bootstrap Video is currently located at the following web address: https://www.youtube.com/watch?v=pvaS7PFQysI.

33. In the Bootstrap Video, Defendant admits to using Aart Van Wingerden's unique design for its new air prune cell propagation trays. For example, at 2 minutes and 20 seconds into the Bootstrap Video, the voiceover states "With input and requests from the farmers that support Bootstrap Farmer, we have created our own version of the iconic Wingerden design." This demonstrates Defendant's knowledge of the fame of Plaintiff's WINSTRIP® Trade Dress as well as Defendant's bad faith in appropriating the same. A portion of this video is represented below.



34. Upon investigation and information, Defendant also has used the Plaintiff's protected WINSTRIP® trademark and variations thereof, such as meta tags in connection with its website, in Google AdWords, and/or Amazon search terms, in an attempt to mislead the public and to attract and misdirect potential consumers using internet search engines, searching the internet for genuine WINSTRIP® trays to Defendant's site and/or Defendant's infringing goods. *See*, for

example **Exhibit F**, showing Defendant's product as the first result on an Amazon search for "Winstrip".

35. Defendant's air prune propagation tray design is virtually identical to and is highly likely to cause confusion with the WINSTRIP® Trade Dress.

36. Defendant's products that have borne and/or bear Defendant's infringing trade dress have competed and/or compete directly with Plaintiff's products bearing its WINSTRIP® Trade Dress.

37. Defendant wrongfully infringes upon Plaintiff's distinctive WINSTRIP® Trade Dress, and has usurped the goodwill represented by Plaintiff's distinctive WINSTRIP® Trade Dress.

38. Defendant's use of its infringing trade dress is willful and deliberate, and is done with full knowledge of Plaintiff's distinctive WINSTRIP® Trade Dress.

39. Upon investigation and information, Defendant's willful use of its infringing trade dress was with the intention of obtaining unfair advantage over Plaintiff for competing products.

40. Upon investigation and information, Defendant regularly does and solicits business, and derives substantial revenue from goods provided to customers in New York State and this judicial district.

41. Upon investigation and information, Defendant derives substantial revenue from interstate commerce from the sale of its infringing air prune propagation trays.

**FIRST CAUSE OF ACTION**
**TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT**

42. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 41 above.

43. Plaintiff, and/or its predecessors-in-interest, has continuously used the WINSTRIP® Trade Dress in association with plant cultivation trays since at least as early as 1995. Plaintiff's continuous sale and promotion of its distinctive WINSTRIP® Trade Dress in interstate commerce began, and has continued, since long prior to the acts of Defendant complained of herein.

44. The WINSTRIP® Trade Dress is not functional and serves only to distinguish Plaintiff's goods from the goods of others.

45. The WINSTRIP® Trade Dress was unique to Plaintiff and its predecessors-in-interest until the infringing acts of the Defendant complained of herein.

46. The WINSTRIP® Trade Dress has acquired secondary meaning in the marketplace due to its continuous and uninterrupted use by Plaintiff and/or its predecessors-in-interest for over 28 years, significant unsolicited media attention, high volume of sales of products bearing the WINSTRIP® Trade Dress, and significant advertising efforts.

47. Defendant has used in commerce, without Plaintiff's consent, reproductions, counterfeits, copies or colorable imitations of the WINSTRIP® Trade Dress in connection with the sale, offer for sale, distribution and/or advertising of its products.

48. Defendant's unauthorized use of the WINSTRIP® Trade Dress in its offering, marketing and advertising of identical goods is likely to cause confusion or to cause mistake, or to deceive consumers as to the origin, sponsorship or approval of Defendant's products and services by Plaintiff and Plaintiff's products sold under the WINSTRIP® Trade Dress, or is likely to cause consumers to believe that Defendant and Plaintiff, and their respective goods, are somehow affiliated, connected with, or sponsored by each other when, in fact, they are not.

49. Defendant's infringement of the WINSTRIP® Trade Dress has been willful and deliberate for the purpose of misleading consumers and injuring the goodwill of Plaintiff.

50. The actions of Defendant described in this Count constitute trade dress infringement in violation of 15 U.S.C. § 1125(a). Defendant's actions have caused, and, unless enjoined by this Court, will continue to cause serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

51. Pursuant to 15 U.S.C. §1117, Plaintiff is entitled to damages for Defendant's infringement, an accounting of profits made by Defendant by its actions and recovery of Plaintiff's costs of this action.

52. The acts of the Defendant make this an exceptional case entitling Plaintiff to recover treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

## SECOND CAUSE OF ACTION
## TRADE DRESS DILUTION UNDER THE LANHAM ACT

53. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 52 above.

54. Plaintiff has extensively and continuously promoted and used the WINSTRIP® Trade Dress in interstate commerce and, as a result, has thereby become a famous and well-known symbol and trade dress of Plaintiff's goods.

55. As a result of the continuous and substantial use of the WINSTRIP® Trade Dress for over 28 years, as well as significant amounts of advertising and sales, the WINSTRIP® Trade Dress is famous within the meaning of § 43(c) of the Lanham Act, and such trade dress became famous before Defendant's use of its infringing trade dress in connection with its goods.

15

56. Defendant is making commercial use in commerce of marks that dilute and are likely to dilute the distinctiveness of the WINSTRIP® Trade Dress by eroding the public's exclusive identification of the famous trade dress with Plaintiff, and otherwise lessening the capacity of the marks to identify and distinguish goods and services.

57. Defendant has caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive marks in violation of 15 U.S.C. § 1125(c).

## THIRD CAUSE OF ACTION
### TRADE DRESS DILUTION UNDER N.Y. GEN. BUS. LAW § 360-l

58. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 57 above.

59. Plaintiff's WINSTRIP® Trade Dress is a strong trade dress due to its distinctive qualities, coupled with the continuous interrupted use of the same for over 28 years. The WINSTRIP® Trade Dress has become so associated in the public's mind with Plaintiff that they readily identify Plaintiff's goods as distinguished from those sold by others.

60. Defendant's activities have created and continue to create a likelihood of injury to the public image and reputation of Plaintiff, and to dilute the distinctive quality of the WINSTRIP® Trade Dress, and all rights held thereunder, in violation of the General Business Law of the State of New York.

61. Such conduct on the part of Defendant caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

62. By reason of the foregoing, Defendant has violated and continues to violate N.Y. Gen. Bus. Law § 360-l.

## FOURTH CAUSE OF ACTION
## UNFAIR COMPETITION - COMMON LAW

63. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 62 above.

64. Plaintiff, as a cause of action and ground for relief, alleges that Defendant is engaging in unfair competition in violation of the common law of the state of New York.

65. Defendant has infringed the WINSTRIP® Trade Dress and continues to do so by marketing and/or selling goods using the WINSTRIP® Trade Dress.

66. Defendant's use of colorable imitations of the WINSTRIP® Trade Dress, misleads consumers regarding the identity of Defendant by suggesting a relationship, affiliation or sponsorship between Plaintiff and Defendant, when no such relationship, affiliation or sponsorship exists.

67. Defendant further uses Plaintiff's protected WINSTRIP® trademark as meta tags in connection with its website, in Google AdWords, and/or Amazon search terms, in an attempt to mislead the public and to attract and misdirect potential consumers using internet search engines.

68. Defendant's acts constitute deception, fraud, misrepresentation, or the concealment, suppression or omission of a material fact, such as that Plaintiff and Defendant are not affiliated.

69. Upon information and belief, Defendant intends to benefit from the goodwill and reputation of Plaintiff and its famous marks, and that others rely upon its unfair methods of competition and unfair or deceptive trade practices.

70. Defendant's acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with Plaintiff, or origin, sponsorship, or affiliation of Defendant by Plaintiff.

71. Defendant's aforesaid acts constitute passing off, tarnishment, dilution, misappropriation, and misuse of Plaintiff's trade dress, unfair competition, palming-off and passing-off against Plaintiff, and unjust enrichment by Defendant, all in violation of Plaintiff's rights under the common law of New York.

72. Upon information and belief, Defendant's actions have been willful and deliberate.

73. Plaintiff has suffered, and continues to suffer, substantial and irreparable injury as a result of Defendant's deceptive business practices and therefore Plaintiff is entitled to injunctive relief under New York common law.

## DEMAND FOR JURY TRIAL

74. Plaintiff hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, Subversive Tools, Inc., prays for judgment against the Defendant granting the Plaintiff:

(A) A preliminary and final injunction enjoining the Defendant, and all persons acting in concert or participation with them or persons acting or purporting to act on his behalf, including but not limited to their officers, directors, stockholders, partners, owners, agents, representatives, employees, attorneys, successors and assigns and any and all persons acting in concert or privity with them, from:

(1) using any portion of the WINSTRIP® Trade Dress, or any other trade dress similar thereto as to be likely to cause confusion, mistake, or deception in connection with the source, sponsorship, affiliation or approval of Defendant's goods or services; and

(2) unfairly competing with Plaintiff in any manner whatsoever.

(B)      Pursuant to 15 U.S.C. §1116, an Order for the recall and destruction of all materials and products within the control of Defendant, their agents or distributors, that in any way falsely advertise the services or products of Defendant, including, without limitation, materials and products containing the WINSTRIP® Trade Dress;

(C)      An accounting and award of Defendant's profits derived by them from any of the wrongful acts complained of herein;

(D)      An accounting and award of Plaintiff's losses incurred as the result of any of the wrongful acts complained of herein;

(E)      An award of statutory damages pursuant to 15 U.S.C. §1117(d);

(F)      An award of treble, increased or punitive damages under the Lanham Act and as may be available under any other statute or common law;

(G)      Plaintiff's costs of this action, prejudgment and post-judgment interest;

(H)      Plaintiff's attorneys' fees, including attorneys' fees pursuant to 15 U.S.C. §1117 or New York State law; and

(I)      Such other and further relief against Defendant in favor of Plaintiff as this Court deems just, equitable and proper.

Dated: August 7, 2023                Respectfully submitted,

<u>**s/Thomas L. Sica**</u>
Nicholas Mesiti, Esq.
Thomas L. Sica, Esq.
HESLIN ROTHENBERG FARLEY & MESITI P.C.
5 Columbia Circle
Albany, NY 12203
Telephone: (518) 452-5600
Facsimile: (518) 452-5579
Email: nick.mesiti@hrfmlaw.com
Email: thomas.sica@hrfmlaw.com

*Attorneys for Plaintiff Subversive Tools, Inc.*