USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/4/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUBVERSIVE TOOLS, INC.,

Plaintiff,

-against-

BOOTSTRAP FARMER, LLC.

Defendant.

23-cv-06946 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Subversive Tools, Inc., initiated this action on August 7, 2023, alleging violations of the Lanham Act, N.Y. Gen. Bus. Law § 360-1, and New York State common law against Defendant Bootstrap Farmer, LLC, ("Bootstrap or "Defendant").

Presently before the Court is the Defendant's Motion to Dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's Motion to Dismiss is GRANTED.

## BACKGROUND

The following facts are derived from the Complaint and are taken as true and construed in the light most favorable to the Plaintiff at this stage.

Plaintiff is a New York State corporation with a principal place of business at 635 Claryville Road, Claryville, New York 12725. (Compl. ¶ 1.) Defendant Bootstrap Farmer LLC is a North Carolina limited liability company with a principal place of business at 151 Crawford Road, Downingtown, Pennsylvania 19335. (*Id*. ¶ 2.) Plaintiff manufactures and sells goods within the fields of farming and agriculture. (*Id*. ¶ 7.) Plaintiff sells its goods through interstate commerce in the United States. (*Id*. ¶ 8.) Plaintiff's productions are well known and respected in the farming industry. (*Id*. ¶ 9.) One of Plaintiff's most popular productions is its WINSTRIP air pruning nursery

1

tray ("WINSTRIP"). (*Id*. ¶ 10.) Aart Van Wingerden ("Wingerden) created the WINSTRIP tray and the WINSTRIP Trade Dress (the "Trade Dress"). (*Id*. ¶ 16.) The WINSTRIP tray was initially manufactured and sold by Winstrip Inc., a company led by Wingerden. (*Id*.) Winstrip, Incc., filed an application with the United States Patent and Trademark Office ("USPTO" for a design patent ("the Design Patent") which covered the Trade Dress. (*Id*. ¶ 17.) Wingerden was listed as the inventor and Winstrip, Inc. was listed as the assignee. (*Id*.) The Design Patent expired on or around August 5, 2011. (*Id*.) From 1995 to March 2018, Winstrip Inc. used the Trade Dress exclusively and extensively in interstate commerce, allegedly garnering significant goodwill from the public. (*Id*. ¶ 18.) In March 2018, Winstrip Inc. assigned all of its intellectual property concerning the WINSTRIP Tray (which included the Trade Dress) to Neversink Tools, a partnership consisting of Conor Crickmore and Carson McNeal. (*Id*. ¶ 19.) In June 2023, Conor Crickmore and Carson McNeal formed Plaintiff Subersive Tools, Inc. Subsequently, Neversink Tools assigned all of its trademarks for the WINSTRIP, including the Trade Dress, to Plaintiff.

The WINSTRIP has been the subject of significant media coverage. (*Id*. ¶ 22.) In 1999, C.S. Vavrina published a paper comparing the WINSTRIP Trays with other competing transplant trays. (*Id*.) Additionally, on February 19, 2015, Fifth Season Garden Co. published an article discussing the efficacy of the WINSTRIP Trays. (*Id*. ¶ 23.) There have been YouTube videos likewise commenting on the WINSTRIP Trays in comparison to competing products. (*Id*. ¶¶ 24, 25.) Defendant sells products which allegedly infringe on the Trade Dress and is a direct competitor of Plaintiff in the sale of farming equipment, including plant cultivation trays. (*Id*. ¶¶ 27, 28.) Defendant allegedly began to sale air prune propagation trays with Plaintiff's distinctive Trade Dress design. (*Id*. ¶ 29.) Defendant's trays look virtually identical to Plaintiff's protected Trade Dress. (*Id*. ¶ 31.) On March 24, 2022, Defendant published a YouTube Video entitled "The

History of Air Pruning and Soil Blocks" (the "Bootstrap Video"). (*Id*. ¶ 32.) In the Bootstrap Video, Defendant states that "[w]ith input and requests from the farmers that support Bootstrap Farmer, we have created our own version of the iconic Wingerden design." (*Id*. ¶ 33.) Defendant has used the Plaintiff's meta tags to attract and direct consumers searching for the WINSTRIP trays to Defendant's site and Defendant's allegedly infringing goods. (*Id*. ¶ 34.) When searching for WINSTRIP on Amazon, Defendant's product is the first result. (*Id*.) Defendant does and solicits business and derives substantial revenue from goods sold to consumers in New York State and through interstate commerce. (*Id*. ¶¶ 40, 41.) Due to the alleged infringement by Defendant, Plaintiff seeks to recover damages, award of Defendant's profit obtained from the alleged infringement, reasonable attorneys' fees, the recall and destruction of Defendant's products containing the Trade Dress, and injunctive relief under the Lanham Act, N.Y. Gen. Bus. Law § 360-1, and New York State common law. (*Id*. ¶ 51, 52, 61, 72.)

## PROCEDURAL HISTORY

On August 7, 2023, Plaintiff commenced this action against Defendant in its complaint ("the Complaint".) (ECF No. 1.) On January 2, 2024, Defendant filed a motion to dismiss and their memorandum of law in support (the "Motion" or "Mot.", ECF Nos. 18 and 20.) Plaintiff filed an opposition to the Motion (the "Opposition" or "Opp.", ECF No. 21.) The Defendant also filed a reply in further support of the Motion (the "Reply", ECF No. 22.)

## LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Additionally, Courts may take judicial notice of certain publicly available documents. *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that courts may "look to public records, including complaints filed in state court, in deciding a motion to dismiss"). The Court may take judicial notice of official records from the United States Patent and Trademark Office and the United States Copyright Office. *See Island Software and Comput. Serve., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (copy right registration); *Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 n.2 (8th Cir. 1996 (trademark registration).

**DISCUSSION**

Plaintiff brings claims pursuant to the Lanham Act, N.Y. Gen. Bus. Law § 360-1, and New York State common law against the Defendant. Plaintiff's Lanham Act claim must be dismissed and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**A. Trade Dress Infringement Under the Lanham Act**

To state a claim for trade dress infringement under the Lanham Act, a party must plead "'(1) the claimed trade dress is non-function; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's goods and the defendant's.'" (*Deckers Outdoor Corp. v. Next Step Grp., Inc.*, No. 23-CV-02545 (ALC), 2024 WL 3459609, *3 (S.D.N.Y. July 18, 2024)).

    a. **Nonfunctionality**

Functionality is a "question of fact that makes dismissal at the pleading stage inappropriate." *Id*. at *4. Nonetheless, even at the motion to dismiss stage, 'a plaintiff must specifically allege non-functionality.'" *Caraway Home, Inc. v. Pattern Brands, Inc.,* No. 20 CIV. 10469, 2021 WL 1226156 (S.D.N.Y. Apr. 1, 2021) (quoting *Shandong Shinho Food Indus. Co., Ltd. v. May Flower Int'l, Inc.*, No. 19 Civ. 1621, 2021 WL 736710, at *22 (E.D.N.Y. Feb. 25, 2021)). *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.,* 521 F. Supp. 3d 222, 261 (E.D.N.Y. 2021) (dismissing Plaintiff's claims of trade dress infringement where Plaintiff only alleged conclusory statement that the trade dress is "inherently distinctive and not functional"). The Second Circuit has stressed that "'rigorous application' of the requirement of nonfunctionality is necessary to avoid 'undermining the carefully circumscribed statutory regimes for the protection

of useful and ornamental designs under federal patent law and copy right law.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) (internal citations omitted).

Plaintiff's complaint only offers conclusory statements that do not sufficiently plead non-functionality. Plaintiff states the Trade Dress "as a whole, is non-functional." (Compl. ¶ 13.) Plaintiff further states that "[t]he diagonal orientation of the cells and air spaces within the tray give . . . a distinctive look. This diagonal orientation is non-functional because, for example, it provides no functional purpose, is not essential to the use or purpose of the product and does not affect the cost or quality of the product." (Compl. ¶ 14.) Later in the Complaint, Plaintiff continues to repeat conclusory statements stating: "[t]he Trade Dress is not functional and serves only to distinguish Plaintiff's goods from the goods of others." (Compl. ¶ 45.)   Stating that the Trade Dress is non-functional because it provides no functional purpose leaves the Court with circular reasoning that does not actually allege the Trade Dress's non-functionality.

"Conclusory allegations of non-functionality are simply insufficient to satisfy the *Iqbal* and *Twombly* standard." *Eliya, Inc. v. Kohl's Corp.*, No. CV 15-2123(JFB)(GRB), 2016 WL 929266, *7  (E.D.N.Y. Feb. 22, 2016). In *Eliya*, the Court dismissed Lanham Act trade dress claims where [t]he complaint provide[d] only the most skeletal assertion that the claimed features are non-functional," writing similarly to Plaintiff's stating "[t]he characteristics of the trade dress defined above are nonfunctional . . . [t]he trade dress rights being claimed do not hinder competition.'" *Id.* The Court therefore found that "Plaintiff's conclusory allegations regarding non-functionality are devoid of sufficient factual allegations to satisfy *Iqbal* and *Twombly*." *Id.*

Similarly, in *Wonderful Co. LLC v. Nut Cravings Inc.*, No. 1:21-CV-03960 (MKV), 2023 WL 6279197 (S.D.N.Y. Sept. 26, 2023), the Court dismissed Lanham Act trade dress claims where the Plaintiffs failed to sufficiently allege non-functionality as the Plaintiffs' "only allegations

regarding nonfunctionality are threadbare recitations of the applicable legal standard." *Id.* at *7. The *Wonderful Co. LLC* Plaintiffs alleged "[t]he elements of the WONDERFUL Packaging . . . are non-functional because they are not essential to the use of the product or package, and do not affect the cost or quality of the pistachios or packaging." *Id.* Additionally, the *Wonderful Co. LLC* Plaintiffs stated "[t]he WONDERFUL Packaging contains distinctive, nonfunctional features." *Id.*

Plaintiff's attempt to plead nonfunctionality parallels the deficient allegations rejected by the Courts in *Eliya* and *Wonderful Co. LLC*. Therefore, the Court similarly concludes the Complaint fails to adequately plead a Lanham Act trade dress infringement claim. *Int'l Leisure Prod., Inc. v. Sunnylife Australia*, No. 16-CV-6215 (NSR), 2018 WL 1305712, *5, Note 5 (S.D.N.Y. Mar. 12, 2018), aff'd, 745 F. App'x 180 (2d Cir. 2018) (granting motion to dismiss Lanham Act trade dress infringement claim where Plaintiff failed to plead sufficient facts to demonstrate non-functionality, noting that "[f]ailure to properly plead non-functionality undermines the rest of the Lanham Act claims because the Act does not protect trade that is functional"); *Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 CIV. 3599 RWS, 2012 WL 3240442, *6 (S.D.N.Y. Aug. 7, 2012) (granting motion to dismiss against Lanham Act claims on the grounds that Plaintiff did not allege sufficient facts to establish that Plaintiff's Trade Dress was non-functional, noting that "conclusory assertions that a product's design is non-functional are insufficient to meet the plaintiff's burden").

The Complaint makes reference to the expired Design Patent to bolster Plaintiff's argument that the Trade Dress is non-functional. (Compl. ¶ 17.) The Design Patent was "for a 'plant growing container'" and "claimed 'The ornamental design for a plant growing container, as shown and described.'" (*Id.*) The Design Patent is affixed to the Complaint as Exhibit B. Plaintiff argues that a Design Patent is "presumptive evidence of non-functionality." *See Topps Co. Inc. v. Gerrit J.*

*Verburg Co*., No. 96 CIV. 7302 (RWS), 1996 WL 719381, *9 (S.D.N.Y. Dec. 13, 1996). In reaching this conclusion, the Court in *Topps* relied on Professor McCarthy's *McCarthy on TradeMarks and Unfair Competition*, specifically citing to § 6.03[5] which read: "[s]ince a design patent is granted for only non-functional designs, it may be presumptive evidence of non-functionality and thus support the trademark claimant." *Id*. at *9. Professor McCarthy subsequently clarified his view, stating that "'while a design patent is some evidence of non-functionality, alone it is not sufficient without other evidence.'" *Keystone Mfg. Co. v. Jaccard Corp*., No. 03-CV-648S, 2007 WL 655758 (W.D.N.Y. Feb. 26, 2007) (quoting *McCarthy on TradeMarks and Unfair Competition 7:93* (4th ed.2005)). Notably, the *Keystone* court concluded that "[the] assertion of a legal presumption of non-functionality stemming from the existence of a design patent is not supported in the caselaw" and "decline[d] to rule that such a presumption exists." *Id*. at *9. Aside from its claims regarding the Design Patent, the only other evidence the Complaint offers is its conclusory assertions of non-functionality. (Compl. ¶¶ 13, 14, 44.) Therefore, these allegations are insufficient to plead non-functionality.

In its Opposition, Plaintiff offers additional arguments to demonstrate the non-functionality of the Trade Dress, but they ultimately do not salvage Plaintiff's trade dress infringement claim. In attempting to prove non-functionality, the Opposition spends time only repeating the conclusory allegations discussed *supra*. Additionally, the Opposition attempts to prove non-functionality by referencing potential alternative designs. (Opposition at 8, 9.) Per *Wonderful Co. LLC*, alternative designs do not establish whether a claimed trade dress feature is nonfunctional. *Wonderful Co. LLC*, 2023 WL 6279197, *22.

Accordingly, Plaintiff's Lanham Act trade dress infringement claim is dismissed without prejudice and the Court will not address the remaining elements needed to state a Lanham Act

trade dress infringement claim at this time. Plaintiff is granted leave to amend to allege further details that might demonstrate that Plaintiff's Trade Dress is non-functional.

### B. Trade Dress Dilution Under the Lanham Act

To state a claim for trade dress dilution under the Lanham Act, "the person who asserts trade dress protection has the burden of proving that – the claimed trade dress, taken as a whole, is not functional and is famous"). *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009).  "A trademark is famous for dilution purposes only 'if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 283 (S.D.N.Y. 2016), aff'd, 699 F. App'x 93 (2d Cir. 2017) (quoting 15 U.S.C. § 1125(c)(2)(A)). Moreover, "[o]nly trademarks that enjoy such broad renown so as to at least approach (if not attain) the status of 'household names' may qualify as famous marks under federal law." *Id*. Courts have held that "niche fame" among a specific marketplace or group of consumers is insufficient and the general public itself must associate the trademark at issue with the trademark owner." *Id*.

The Complaint alleges that "Plaintiff has extensively and continuously promoted and used the Trade Dress in interstate commerce, and as a result has thereby become a famous and well-known symbol and trade dress of Plaintiff's goods." (Compl. ¶ 54.) The Plaintiff alleges that because of "continuous and substantial use" of the Trade Dress for "over 28 years", along with "significant amounts of advertising and sales" the Trade Dress is famous for the purposes of Lanham Act trade dilution claims. (*Id*.) At several other points in the Complaint, the Plaintiff refers to the Trade Dress as "famous." *See* (Compl. ¶¶ 56, 57, 69.) The Complaint offers several examples of coverage of the WINSTRIP: (1) a vegetable horticulturalist at the University of Florida Institute of Food and Agricultural Science's published paper comparing the WINSTRIP "to other competing

transplant trays" (Compl. ¶ 22); Fifth Season Garden Co.'s article entitled "WINSTRIP Trays: Soil Blocks without the Mess" (Compl. ¶ 23); and then a series of YouTube videos comparing the WINSTRIP to competing products (Compl.¶¶ 24, 25.)

These examples and the allegations in the Complaint are insufficient to plead that WINSTRIP enjoys the requisite level of famousness to state a trade dilution claim. To the contrary, these examples suggest a niche market reputation given their insular focus and orientation around a specific industry. The Complaint even appears to recognize this, stating that "Plaintiff's products have become well-known and highly respected in the farming industry." (Compl. ¶ 9.) While the Complaint generically asserts that it has "gained a substantial loyal following of customers, owing to its established reputation" in the farming industry, it makes no comparable allegations to the general United States populace. (*Id*. ¶ 9.) This only suggests that Plaintiff, within the farming industry, has a substantial following, which does not rise to the necessary level of famousness for a Lanham Act trade dilution claim. Plaintiff's representation that the Trade Dress is "famous and well-known" because it has been used in interstate commerce does not save the Complaint as these are merely "labels and conclusions not entitled to a presumption of truth." *Boarding Sch. Rev., LLC v. Delta Career Educ. Corp*., No. 11 CIV. 8921 DAB, 2013 WL 6670584, *7 (S.D.N.Y. Mar. 29, 2013).

Plaintiff's assertions that Trade Dress has been used in interstate commerce and that Plaintiff has exhausted significant amount of advertising and enjoyed significant sales "at best, make it plausible their Marks are recognized within [a] niche market." *Id*. Indeed, the Court in *Boarding Sch. Rev., LLC* rejected an anti-dilution argument where Counter-Plaintiffs relied on similar reasoning, arguing that its mark was famous because Counter-Plaintiffs "have invested 'enormous' sums of money in marketing, providing services that are 'highly sought after' and have

experienced 'extraordinary and longstanding sales success.'" *Id.* While this might evidence a niche market acclaim, it does not suggest that Plaintiff's Trade Dress is "truly famous to the general consuming public of the United States." *Id. See also Kuklachev v. Gelfman,* 600 F. Supp. 2d 437, 472 (E.D.N.Y. 2009) (granting motion to dismiss against Lanham Act trade dilution claim where Plaintiff failed to demonstrate its mark was "truly famous"). Thus, Plaintiff's Lanham Act trade dilution claim is dismissed without prejudice, and the Court will not address the remaining elements needed to state a Lanham Act trade dilution claim at this time. Plaintiff is granted leave to amend to allege further details that might demonstrate that Plaintiff's Trade Dress is non-functional and is famous.

## C. Trade Dress Dilution under N.Y. Gen. Bus. Law § 360-1 and Unfair Competition Under New York State Common Law

Because Plaintiff's Lanham Act claims – the only claims over which the Court has original jurisdiction – must be dismissed, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28. U.S.C. § 1367(c) (a district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction"). Thus, Plaintiff's Third Cause of Action and Fourth Cause of Action claims are dismissed without prejudice to recommence in state court.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's motion to dismiss Plaintiff's First and Second Causes of Action against Defendant without prejudice Plaintiff is granted leave to file an Amended Complaint by October 18, 2024. Plaintiff is advised that the Amended Complaint will replace, not supplement, the Complaint, and so any claims that it wishes to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiff

file an Amended Complaint, the Defendant is directed to answer or otherwise respond by November 8, 2024. If Plaintiff fails to file an Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 18.


Dated:    September 4, 2024                            SO ORDERED:
          White Plains, New York

                                         _____
                                              NELSON S. ROMÁN
                                            United States District Judge